**BELIZAIRE LAW P.C.**
Landry Belizaire, Esquire
2 Broad Street, Suite 505
Bloomfield, New Jersey 07003
Tel: (973) 748-0808; Fax: (973) 748-3949
Email: LB@BELIZAIRELAW.COM

*ATTORNEY FOR PLAINTIFF A. RUM KIM*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| A. RUM KIM,<br><br>                Plaintiff,<br><br>    v.<br><br>NYC GREEN TRANSPORTATION GROUP LLC; NURIDE TRANSPORTATION GROUP LLC; ANTHONY G. PARRIZZI; and NADIM AHMED,<br><br>                Defendants. | Civil Case No. 1:23-cv-05445-FB-PK<br><br>Hon. Frederick Block, U.S.D.J<br><br>Hon. Peggy Kuo, U.S.M.J.<br><br>**THIRD AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, A. RUM KIM, by way of "Third Amended Complaint and Jury Demand" against Defendants, NYC GREEN TRANSPORTATION GROUP LLC, NURIDE TRANSPORTATION LLC, ANTHONY G. PARRIZZI, and NADIM AHMED (a/k/a NADIM AHMED KHAN), hereby avers and alleges:

## NATURE OF THE ACTION

1.    This civil action involves a South Korean citizen, who was induced by Defendants to invest $500,000.00 under the EB-5 Immigrant Investor Program (the "Program"). By way of background, Defendants recruited Plaintiff to apply for the Program, which would classify her as an Alien Entrepreneur and allow her to obtain lawful permanent residence in the U.S. The Program is an established federal

employment-based immigration program, designed to stimulate the U.S. economy through foreign investments and job creation. Under the Program, foreign investors invest a large capital contribution in designated commercial enterprises to help create or preserve jobs in targeted sectors of the U.S. economy. The capital contribution serves as a precondition for qualifying for an EB-5 Visa and for obtaining lawful permanent residence; among other criteria, the participating commercial enterprises must be preapproved by USCIS under federal law and must create or preserve at least 10 full-time U.S. jobs from the foreign capital contribution. If approved, foreign investors and their family obtain lawful permanent residence and later become eligible for U.S. citizenship. Here, Plaintiff initiates this action because Defendants breached their fiduciary duties, breach their contract and covenant to good faith, and engaged in fraud by misusing, stealing, and misappropriating Plaintiff's capital contribution through unlawful means in violation of federal laws.

## THE PARTIES

2. Plaintiff, A. RUM KIM ("KIM"), is a foreign national, resident, and citizen of Seoul, South Korea.

3. At all relevant times, Defendant NYC GREEN TRANSPORTATION GROUP LLC ("NYC GREEN") was/is a limited liability company established and existing under the laws of New York State with its principal place of business at 33-24 Northern Boulevard, 5th Floor, Long Island City, New York 11101.

4. At all relevant times, NYC GREEN was authorized by USCIS to recruit foreign nationals from various countries to apply for the EB-5 Program.

5. At all relevant times, Defendant NURIDE TRANSPORTATION GROUP LLC ("NURIDE") was/is a limited liability company established and existing under the

laws of New York State with its principal place of business at 33-24 Northern Boulevard, 5th Floor, Long Island City, New York 11101.

6. At all relevant times, NURIDE was authorized U.S.C.I.S. to recruit foreign nationals from various countries to apply for EB-5 Program.

7. At all relevant times, NURIDE acted as the Manager of NYC GREEN.

8. ANTHONY G. PARRIZZI ("PARRIZZI") is a resident and citizen of Erie County, New York State.

9. PARRIZZI is named as a defendant in this action both in his individual capacity and as a Managing Member of NYC GREEN and NURIDE.

10. NADIM AHMED ("AHMED") is a resident and citizen of Nassau County, New York State.

11. AHMED is also known as NADIM AHMED KHAN.

12. AHMED is named as a defendant in this action both in his individual capacity and as a Managing Member of NYC GREEN and NURIDE.

13. At all relevant times, NYC GREEN and NURIDE were in the business of providing ground transportation services.

## JURISDICTION AND VENUE

14. The U.S. District Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds $75,000.00, exclusive of interests and costs; moreover, Plaintiff is a citizen and resident of South Korea, while Defendants are all citizens and residents of New York State. Jurisdiction has further been determined by Judge Block's Memorandum and Order of February 3, 2025, which is effectively the law of the case.

15. The U.S. District Court also has federal question jurisdiction over this action pursuant to 28 USC § 1331.  The matter in controversy arises out violations for federal statutory laws.  Specifically, in 1990, Congress created the "EB-5 Immigrant Investor Program" to stimulate the U.S. economy through job creation and foreign investments.  8 USC §1153, INA §203(b)(5).  The Program has since been reauthorized several times by the federal government.  President Biden signed the "EB-5 Reform and Integrity Act" as part of the Consolidated Appropriations Act, 2022 (Public Law 117-103).  It is through this Act of Congress that Defendants recruited Plaintiff and lured her to invest money in the U.S. economy to benefit the U.S. workers.  USCIS was charged with administering the Program.  USCIS approved and authorized Defendants to collect international foreign investments from Plaintiff and others, none of whom were approved for the promised EB-5 Visa.

16. The United States District Court further has federal question jurisdiction over this action because it arises out of Defendant's violations of Section 17 of the Securities Act, 15 USC 77q(a); Section 5 of the Securities Act 15 USC 77e; and the Exchange Act, 15 USC 78j(b).  Specifically, Defendants unlawfully used Plaintiff's foreign investments to defray the costs of an unrelated settlement agreement with the SEC; Defendants unlawfully offered and sold unregistered securities to Plaintiff and other foreign investors in violation of the Securities Act; Defendants falsely promised that they would abide by federal laws and that Plaintiff's foreign investments would be used in a manner consistent with the federal "EB-5 Program" requirements.  Lastly, Defendants devised a scheme to defraud foreign investors and used international banking wires to transfer $500,000 from Korea to New York in violation of federal law.

17. Venue is proper in the Eastern District of New York pursuant to 28 USC § 1391(b) because Defendants had their principal place of business in this District and the cause of action arose in this District, specifically on Long Island City, Queens County, New York State.

**BACKGROUND ALLEGATIONS COMMON TO ALL COUNTS**

18. In January 2018, Defendants recruited KIM as a foreign national to apply for the EB-5 Program. Defendants demanded that KIM invest a capital contribution of $500,000 in their companies NYC GREEN and NURIDE; Defendants led KIM to believe that they would submit all requisite paperwork to USCIS and that KIM would obtain lawful permanent residence in the U.S. within a short period of time.

19. In February 2018, KIM wired $500,000.00 from her account at "Citibank, Korea" to Defendants' account at "Signature Bank, New York," as directed. Defendants represented themselves as new commercial enterprises approved by USCIS for the EB-5 Immigrant Investor Program, and doing business in targeted employment areas, as defined by USCIS and the applicable immigration laws.

20. In February 2018, Defendants further demanded that KIM pay $50,000.00 in administrative fees to NYC GREEN and NURIDE. The administrative fee was later reduced to $20,000.00 through negotiations. As directed, KIM paid $20,000.00 in administrative fees to Defendants.

21. In February 2018, KIM filed her Petition with USCIS, through immigration counsel, to obtain an EB-5 Foreign Investor Visa. Defendants and Counsel had a long-standing personal and business relationship, but never disclosed it to KIM.

22. During the EB-5 Visa application process, Defendants promised the return of KIM's money, if USCIS were to deny KIM's application.

23. KIM relied on Defendants' promise of a full refund, which was conveyed both orally and in writing. Specifically, Defendants promised KIM: "In the event that the EB-5 investors' I-526 petition is denied, <u>NYC Green Transportation Group, LLC, existing and operating company[,] guarantees to return the EB-5 investors' subscription proceeds immediately. The company has sufficient assets and collaterals to return the funds</u>." [Emphasis added].

24. At all relevant times, Defendants reiterated: "If the investor's I-526 petition is denied, <u>the LLC shall return the Investor's Investment Amount within ninety (90) days of receipt of the Investor's written request therefor</u>, and the Investor shall be redeemed from status as a member of the LLC. In the event any visa petition is denied as described above, the Investor's rights are limited to the return of his or her capital contribution as set forth herein." [Emphasis added].

25. At all relevant times, Defendants further reiterated: "If U.S. Citizenship & Immigration Services (USCIS) denies an Investor's I-526 petition, […] <u>then the Investment Amount and the Administrative Fee shall be returned to such Investor without interest or deduction</u>." [Emphasis added].

26. KIM relied upon Defendants' promises to return her capital investment and administrative fee as being truthful.

27. KIM was induced and persuaded to do business with these Defendants primarily because of their guarantee for a full refund, their promise to assist her in obtaining legal permanent residence, and the fact that USCIS approved Defendants' companies as a regional center for the EB-5 foreign investments.

28. In September 2022, USCIS denied KIM's petition for an EB-5 Foreign Investor Visa because of various contradictions, anomalies, and inconsistencies in

Defendants' supporting documentation. These included, without limitation, Defendants' improper use or allocation of KIM's money; Defendants' failure to corroborate that they created or preserved at least 10 full-time jobs; Defendants' incredible claims about their business assets; and Defendants' exaggerated claims about their income.

29. In essence, Defendants provided spurious information and documentation to USCIS as a cover for their unlawful business practices and misappropriation of foreign capital for several years.

30. In October 2022, after USCIS denied her EB-5 Foreign Investor Visa Petition, KIM demanded that Defendants return her capital investment and administrative fee as required by their Agreement.

31. In response, Defendants advised KIM that her money is "gone" and cannot be returned.

32. To date, Defendants have failed and refused to return KIM's money, despite several demands.

33. In sum, Defendants obtained $520,000.00 from KIM in early 2018; Defendants failed to properly use and allocate KIM's funds as required by section EB-5 Immigrant Investor Program; Defendants used false promises, deceptive business practices, and other fraudulent means to delude and induce KIM into giving them $520,000.00; Defendants used federal laws to recruit foreign nationals and to entice Plaintiff into investing her life savings, on the false promise of a green card; Defendants failed to abide by their promise to return KIM's capital contribution in 2022, after USCIS denied her application; Defendants transferred KIM's money to unrelated business ventures, used it for their personal expenses, gains, and benefits; used it to pay

their unrelated settlement with the Securities and Exchange Commission, and otherwise squandered the money on a lavish lifestyle.

## COUNT ONE
### (Breach of Fiduciary Duty)

34. KIM re-alleges and incorporates by reference all allegations contained above as if fully set forth herein.

35. At all relevant times, KIM and Defendants had a business arrangement, whereby Defendants received KIM's $520,000.00 and was supposed to safely keep this money in their possession, custody, and control only for purposes of KIM's immigration benefits through the EB-5 Program; as such, Defendants were required, authorized, and trusted to use KIM's money only as mandated by applicable immigration laws, to ensure the approval of KIM's EB-5 Foreign Investor Visa.

36. At all relevant times, Defendants had a fiduciary duty owed to KIM, including a duty of trust, confidence, loyalty, good faith, and fair dealing to use KIM's money in a lawful manner for KIM's immigration benefits.

37. At all relevant times, Defendants had a fiduciary duty owed to KIM, including a duty to disclose their personal and business relationship with immigration counsel, which created a real or potential conflict of interests. Defendants never disclosed their personal and business relationship with immigration counsel.

38. Instead of adhering to their fiduciary duties, Defendants disregarded KIM's best interests entirely and use her money to engage in self-dealing, chicanery, mendacity, waste, and unlawful conduct to satisfy their needs and to benefit themselves.

39. At all relevant times, Defendants breached their fiduciary duty owed to KIM; they abused their position of trust and loyalty, by providing spurious, contradictory, or inconsistent information to USCIS during KIM's EB-5 application

process; they failed to create or preserve at least 10 full-time jobs as required by USCIS; they misappropriated and misallocated KIM's money without authorization; they engaged in systematic mendacity in their dealings with KIM; and they failed and refused to return KIM's money as promised and agreed.

40. At all relevant times, KIM has been substantially damaged as a direct and proximate consequence of Defendants' wrongful conduct and breach of fiduciary duty.

**WHEREFORE,** KIM demands Judgment against Defendants jointly and severally for compensatory, consequential, punitive, and/or treble damages in the amount of $1,500,000; for reasonable counsel fees, interests, and costs of suit; and for such further relief as the Court may deem equitable and just.

## COUNT TWO
### (Breach of Contract & Covenant of Good Faith/Fair Dealing)

41. KIM re-alleges and incorporates by reference all allegations contained above as if fully set forth herein.

42. At all relevant times, KIM and Defendants had an enforceable agreement. Their relationship was contractual in nature: i.e., KIM was supposed to invest a large capital contribution in Defendants' companies; in return, Defendants were supposed to assist KIM in obtaining permanent residence through the EB-5 Program or return KIM's capital contribution.

43. PARRIZZI and AHMED each signed the Parties' enforceable agreement as a Managing Member of NYC GREEN.

44. PARRIZZI and AHMED each signed the Parties' enforceable agreement as a Managing Member of NURIDE.

45. The above-described agreement had a covenant of good faith and fair dealing by which Defendants promised, <u>inter alia</u>, to safeguard KIM's capital

contribution and administrative fee, to abide by all applicable criminal and immigration laws, to refrain from theft and misappropriation of funds, and to refrain from dealing with KIM and USCIS based on lies, ulterior motives, and bad faith, and to otherwise refrain from engaging in unconscionable business practices, et cetera.

46. Defendants breached their contract with KIM and their covenant of good faith and fair dealing by providing false information to KIM and to USCIS, by misappropriating KIM's money for their own private ventures, by failing to return KIM's money as promised after the EB-5 Petition was denied, and by violating various criminal and civil statutes, et cetera.

47. At all relevant times, KIM has been substantially damaged as a direct and proximate consequence of Defendants' wrongful conduct, breach of contract, and breach of the covenant of good faith and fair dealing.

**WHEREFORE,** KIM demands Judgment against Defendants jointly and severally for compensatory, consequential, punitive, and/or treble damages in the amount of $1,500,000; for reasonable counsel fees, interests, and costs of suit; and for such further relief as the Court may deem equitable and just.

## COUNT THREE
### (Fraud, Deceit, and Misrepresentation)

48. KIM re-alleges and incorporates by reference all allegations contained above as if fully set forth herein.

49. At all relevant times, Defendants deliberately made various misrepresentations of material facts and engaged in fraudulent conduct to mislead, delude, and induce KIM into believing: (a) that they would serve as an honest, loyal, and trustworthy business partner for the EB-5 Program; (b) that they would conduct their business operations in a transparent and legal manner; (c) that they would comply with

immigration and other federal laws; that they would provide USCIS with accurate and truthful information and documentation; (d) that they would properly allocate KIM's capital contribution as required by law and use it only on designated projects; (e) that they would use KIM's capital investment to stimulate the U.S. economy and to create or preserve at least 10 full-time jobs for U.S. workers for at least two years; (f) that they would not engage in self-dealing to KIM's detriment; (g) that they would not transfer KIM's money to themselves, other persons or companies, or unapproved projects; (h) that they had "sufficient assets and collaterals" to return and guarantee KIM's capital investment; (i) that they would, in fact, return KIM's money, if her EB-5 Petition were denied, et cetera. Defendants made these misrepresentations with knowledge of their falsity and with the expectation that KIM would rely on them to her detriment.

50. At all relevant times, PARRIZZI and AHMED aided, abetted, and colluded with NYC GREEN and NURIDE to devise and implement an international scheme to misrepresent critical facts to KIM and USCIS, to deceive KIM and USCIS, and to defraud KIM and other foreign nationals out of large amounts of money; to keep their nefarious intentions and scheme secret, to utilize KIM's capital contribution for improper and unlawful purposes, to transfer KIM's capital contribution to themselves and/or other companies, and to use KIM's capital contribution for their personal gains and benefits; and to circumvent federal laws; and to utilize various wire communications, telephone calls, e-mail communications, text messages, and the international banking system as means to execute their fraudulent scheme.

51. At all relevant times, Defendants engaged in deliberate mendacity and false pretenses to induce KIM to make a large capital contribution to their companies.

11

Belizaire Law P.C.

52. At all relevant times, KIM relied upon the aforesaid mendacious statements and deceptive conduct to her detriment and financial jeopardy.

53. At all relevant times, KIM has been substantially damaged as a direct and proximate consequence Defendants' common law and statutory fraud, deceit, and misrepresentations as described above.

**WHEREFORE,** KIM demands Judgment against Defendants jointly and severally for compensatory, consequential, punitive, and/or treble damages in the amount of $1,500,000; for reasonable counsel fees, interests, and costs of suit; and for such further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues.

## CERTIFICATION OF NO OTHER PENDING ACTION OR ARBITRATION

I hereby certify that this matter in controversy is not the subject of any other Court or arbitration proceedings.

Dated: May 8, 2025

**BELIZAIRE LAW P.C.**
*Attorney for Plaintiff A. Rum Kim*

*S/ Landry Bélizaire*
Landry Belizaire, Esquire
2 Broad Street, Suite 505
Bloomfield, NJ 07003
Tel: 973-748-0808
lb@belizairelaw.com